[651 NYS2d 249]

In the Matter of Ashok Dhabuwala, Petitioner, v State Board for Professional Medical Conduct, Respondent.

Third Department, December 26, 1996

APPEARANCES OF COUNSEL

*McAloon & Friedman, P. C.,* New York City *(Anthony Z. Scher,* Scarsdale *[Wood & Scher],* of counsel), for petitioner.

*Dennis C. Vacco, Attorney-General,* New York City *(Barbara K. Hathaway* of counsel), for respondent.

### OPINION OF THE COURT

PETERS, J.

Pursuant to a notice of hearing and statement of charges, petitioner, an obstetrician/gynecologist, was charged by the Bureau of Professional Medical Conduct (hereinafter BPMC) with practicing with gross negligence, negligence on more than one occasion, ordering unwarranted treatment, fraudulent practice and failing to maintain accurate records. The conduct alleged occurred with respect to three patients during the period between 1987 and 1989.

At the conclusion of a hearing held before a Hearing Committee of respondent State Board for Professional Medical Conduct, all charges, other than those alleging gross negligence and that of fraudulent practice, were sustained. However, in the issuance of its order, it was noted that "[a]lthough [petitioner] must bear full responsibility for the serious charges sustained against him, the [Hearing] Committee recognizes that the conduct of others contributed to the inadequate medical care received". Hence, it imposed a two-year suspension of petitioner's license, which was stayed, placed him on probation for two years and required that he submit quarterly reports to the Office of Professional Medical Conduct (hereinafter OPMC) to determine whether his decisions to pursue surgical intervention were appropriate.

BPMC thereafter filed a notice of appeal with the Administrative Review Board for Professional Medical Conduct (hereinafter ARB) to specifically challenge the penalty imposed. The sole request made was for the ARB to "add a requirement that, *prior to performing* a vaginal or abdominal hysterectomy, [petitioner] be required to obtain a *concurring,* but independent second opinion from a suitably board certified physician" (emphasis in original). By this simple modification, counsel for BPMC contended that "adequate protection of the public" would be ensured. Counsel for petitioner immediately notified the ARB that based upon their understanding that acceptance of this agreement would circumvent further review, they agreed to the modification.

After setting forth the scope of its permissible review (*see*, Public Health Law § 230-c), the ARB remanded this matter to the Hearing Committee for more information as to the penalty imposed "or why the Committee feels the penalty is sufficient to protect the public". In so doing, the ARB requested the Hearing Committee to address nine specific questions which included, *inter alia*, the following:[1]

"4. Does the Committee feel that [petitioner']s negligence was the result of poor judgment, poor surgical skills or both?

"5. Is [petitioner] competent to continue practicing surgery?

"6. Does [petitioner] have sufficient knowledge to make the proper judgments in practicing surgery? * * *

"9. Did the Committee consider sending [petitioner] for an evaluation of his skills as a physician?"

The supplemental determination, fully responsive to the questions posed, noted that "[petitioner's] surgical skills were never questioned" and that "[a]ll of [petitioner's] inappropriate treatment was in response to requests or demands from his Supervisory Physician and/or his patients. He used poor judgment in responding to these requests or demands." In response to the particular questions posed, the Hearing Committee advised the ARB that it felt that petitioner's negligence was the result of poor judgment, that he is competent to continue practicing surgery, that he possesses "sufficient knowledge to make the proper judgments in practicing surgery", and that while it considered sending him for an evaluation of his skills, such option was rejected upon its finding that petitioner's negligence was based upon poor judgment "rather than lack of skills".

Although the ARB sustained the Hearing Committee's determination on the charges, "concerned that [petitioner's] poor judgement may be the result of poor cognitive skills and that * * * [his] negligence and ordering of excessive treatment may indicate a lack of basic knowledge necessary to practice

---

1. The other questions posed by the ARB were as follows:

"1. What were the Committee's conclusions regarding the charges of gross negligence and practicing the profession fraudulently?

"2. What conduct of others does the Committee feel contributed to the inadequate medical care provided to Patients A, B and C?

"3. Why does the Committee limit the review of [petitioner's] major operative cases to a two year period? * * *

"7. Is record review intended as remediation for [petitioner]?

"8. Is the record review alone enough to correct the deficiencies in [petitioner's] practice?"

medicine", it modified the penalty by ordering petitioner to undergo an evaluation by the Physician Prescribed Educational Program (hereinafter PPEP).[2] Therein, the ARB detailed that if such evaluation determined that petitioner "possesse[d] the requisite knowledge to safely and effectively practice medicine", the penalty imposed would be probation for a period of two years, with the conditions of probation being those which were originally recommended by the Hearing Committee and then further modified and agreed to by petitioner. If, however, the evaluation determined that petitioner did not possess the requisite knowledge to practice medicine safely and effectively, "then the matter [would] be returned to the [ARB] for a further deliberation on the appropriate penalty".

Petitioner fully participated in the PPEP evaluation. Recognizing that the ARB required PPEP to make only one of those two decisions, the program director concluded that "the findings of the evaluation are not definitive enough to make such a dichotomous decision without bias". The ARB therefore found that because "PPEP * * * was unable to [determine] that * * * [petitioner] could practice medicine safely and effectively", each party was permitted 30 days to provide comments upon the appropriate penalty in this case, based upon the ARB's "findings of misconduct" and upon "the finding from the PPEP Evaluation".

Counsel for BPMC sought revocation of petitioner's license or a suspension with mandatory retraining. Petitioner contended that since the review did not find him unfit to practice medicine, the prior penalty, as modified by agreement, should remain undisturbed. The ARB's final determination and order increased the probationary period to seven years and ordered that petitioner's license be limited to permit him to practice only in a hospital or other facility licensed pursuant to Public Health Law article 28. Petitioner then commenced this proceeding.

Petitioner contends that the notice requirements of due process preclude an administrative agency from finding a professional guilty of conduct which was not specifically set forth in the statement of charges (see, Matter of Block v Ambach, 73

2. The PPEP program is run under the auspices of the Department of Family Medicine of the State University of New York Health Science Center at Syracuse and the Department of Medical Education at St. Joseph's Hospital and Health Center in Syracuse. It is not a branch of the New York State Department of Health or the State Board for Professional Medical Conduct.

NY2d 323; *Matter of Murray v Murphy*, 24 NY2d 150; *Matter of Orozco v Sobol*, 162 AD2d 834). We agree. The record clearly reflects that the penalty imposed was based upon the uncharged offense of incompetence, a separate act of misconduct under the Education Law (*compare*, Education Law § 6530 [3], [4], *with* Education Law § 6530 [5], [6]). OPMC itself specifically distinguishes between negligence and incompetence. In an internal memorandum defining terms relating to professional malpractice, the general counsel to the Department of Health stated that "[n]egligence is applicable to an act or omission of a physician which constitutes a breach of the duty of care [whereas] [i]ncompetence is directed to the lack of the requisite knowledge or skill in the performance of an act". While the ARB's review powers include the authority to increase the severity of a sanction imposed by a Hearing Committee (*Matter of Kabnick v Chassin*, 89 NY2d 828), it cannot ground such sanction upon conduct not charged.

The ARB is empowered to review "whether or not the determination and the penalty are consistent with the findings of fact and conclusions of law and whether or not the penalty is appropriate and within the scope of penalties permitted" (Public Health Law § 230-c [4] [b]). Once the Hearing Committee expressly found and concluded, upon reconsideration, that petitioner is competent and possesses the requisite knowledge and skill to practice safely, the ARB's continued challenge to those findings of fact on the issue of petitioner's competence was beyond its authority. Notwithstanding its protestations to the contrary, it is clear from the language employed in its remand to the Hearing Committee, in the supplemental questions posed and in its referral to PPEP that the ARB attempted to undermine the Hearing Committee's findings of fact by conducting additional inquiry into an uncharged offense.

Because "[i]t is axiomatic that due process precludes the deprivation of a person's substantial rights in an administrative proceeding because of uncharged misconduct" (*Matter of Block v Ambach, supra*, at 332), we annul the determination rendered and remit it to the ARB for further proceedings not inconsistent herewith. In so remitting, we note that once the Hearing Committee issued its supplemental determination and order—in which it clarified the record below as to its findings and penalty, reiterated that the findings of negligence were based upon poor judgment rather than lack of skills, and concluded that it had no objection to the stipulated modification of its determination and order with respect to penalty—

the ARB had before it all necessary information upon which to conduct its review.

MERCURE, J. P., WHITE, YESAWICH JR. and CARPINELLO, JJ., concur.

Adjudged that the determination is annulled, without costs, and matter remitted to the Administrative Review Board for Professional Medical Conduct for further proceedings not inconsistent with this Court's decision.