◼ In the Matter of IRA WEISENTHAL, Petitioner, v. NEW YORK STATE BOARD OF REGENTS, Respondent. [671 NYS2d 568] —Spain, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Education Law § 6510 [5]) to review a determination of respondent which, *inter alia*, suspended petitioner's license to practice podiatry in New York for a period of two years.

. Petitioner, a licensed podiatrist, was charged by the Office of Professional Discipline with two specifications of professional misconduct stemming from postoperative care that he rendered to a patient after performing a bunionectomy. The charges were presented at a disciplinary hearing before a panel of the State Board of Podiatry (hereinafter the Hearing Panel); proof was established that on the day following the surgery the patient contacted petitioner's office complaining that her foot was painful, swollen and bleeding. Petitioner was on vacation and his office referred the patient to another podiatrist, Jay Rogove, who determined that the foot was infected and prescribed the antibiotic Duricef. Thereafter, the patient's condition gradually improved as she continued treating with Rogove in petitioner's absence.

When petitioner returned from vacation he resumed the patient's postoperative care. According to the patient, petitioner

advised her that her foot was not infected and he therefore discontinued all antibiotics. However, petitioner testified that he believed that an infection was present and discontinued Duricef in favor of another antibiotic and two anti-inflammatory drugs. Petitioner conceded that he failed to perform an X ray or bone scan and failed to culture a blister that had formed on the foot. Following further treatment with petitioner, the patient's foot again became swollen and painful and she again sought treatment from Rogove, who diagnosed her with the beginning of osteomyelitis, a severe bone and bone marrow infection resulting from an untreated staph infection in the foot.

Following the hearing, the Hearing Panel found petitioner guilty of practicing podiatry with gross negligence and gross incompetence in failing to provide the patient with appropriate postoperative care leading to osteomyelitis. The Hearing Panel recommended that petitioner's license to practice podiatry in New York be suspended for two years with eligibility to apply for early termination of the suspension after three months and satisfactory completion of designated courses from an accredited college of podiatric medicine. After reviewing the record and hearing oral arguments, the Regents Review Committee, by a 2 to 1 vote, recommended that the Hearing Panel's determination and penalty be accepted. Respondent accepted the findings and conclusions as recommended and issued the appropriate order. Petitioner then commenced the instant CPLR article 78 proceeding challenging respondent's order.

We confirm the determination. The appropriate inquiry in a CPLR article 78 proceeding such as this "is limited to whether the determination of petitioner's guilt by a preponderance of the evidence is fully supported by substantial evidence in the record" (*Matter of Howe v Board of Regents*, 210 AD2d 541, 542; *see, Matter of Poulard v Commissioner of Health of State of N. Y.*, 202 AD2d 756, 757, *lv denied* 84 NY2d 805); the evidence must include sufficient medical expert testimony demonstrating that the petitioner deviated from accepted standards of podiatric practice (*see, Matter of Loffredo v Sobol*, 195 AD2d 757, *lv denied* 82 NY2d 658; *Matter of Cohen v Ambach*, 112 AD2d 497). The weight to be given conflicting expert testimony, however, is a matter left to the trier of fact and is not subject to this Court's review (*see, Matter of Edelman v Sobol*, 174 AD2d 896, *appeal dismissed* 78 NY2d 1006).

Here, petitioner was found to have practiced podiatry with gross negligence and gross incompetence in that he, among other things, failed to provide appropriate postsurgical treat-

ment which lead to osteomyelitis in the patient's foot, failed to perform an X ray or bone scan of the foot and inappropriately discontinued the aggressive antibiotic treatment indicated for the infection. In our view, the testimony of Rogove, the podiatrist who treated the patient and testified both as a fact and expert witness on behalf of the Office of Professional Discipline, provided substantial evidence to support the findings of professional misconduct. Rogove testified that X rays and cultures which he performed on the patient's foot during her initial visits revealed a staph infection, that the condition required aggressive antibiotic treatment with Duricef as opposed to less potent antibiotics, and that petitioner deviated from accepted standards of podiatric care in failing to perform a culture to discover the infection and in failing to continue treatment with Duricef. In Rogove's opinion, petitioner's decision to discontinue Duricef and his over-all postoperative treatment deviated from acceptable standards of podiatric care. Rogove further opined that the failure to properly treat the infection could have caused the osteomyelitis condition and that the patient would not have developed osteomyelitis if petitioner had continued her on Duricef.

This expert proof, along with petitioner's admissions that he discontinued Duricef and failed to perform tests to determine the existence of an infection, was sufficient to support the determination that petitioner practiced podiatry with gross negligence and gross incompetence (*see, Matter of Poulard v Commissioner of Health of State of N. Y., supra,* at 757-758). Petitioner's testimony that he continued some form of antibiotic treatment and his opinion that the postoperative care was acceptable in his medical judgment merely created a credibility issue within the exclusive province of the Hearing Panel to resolve (*see, Matter of Stein v Board of Regents,* 169 AD2d 857, *lv denied* 77 NY2d 810, *cert denied* 502 US 938). The Hearing Panel was not required to accept the various explanations offered by petitioner to justify his choice of treatments (*see, Matter of Hachamovitch v State Bd.,* 206 AD2d 637, *lv denied* 84 NY2d 809).

Petitioner's contention that the determination was not supported by substantial evidence, because Rogove's opinion that the postoperative care "could have" or "possibly" caused the patient to develop osteomyelitis was too speculative to constitute competent expert proof, lacks merit. In our view, the substance of Rogove's testimony as a whole makes it "reasonably apparent" that he intended to express a sufficient degree of certainty in his opinion and that, therefore, the opinion con-

stituted competent expert proof (*see, Matott v Ward*, 48 NY2d 455, 461; *see also, John v City of New York*, 235 AD2d 210).

Next, we find some merit in petitioner's contention that the Hearing Panel members improperly used their own expertise as a substitute for evidence in support of certain factual findings. It is settled law that while a hearing panel may permissibly question witnesses and use its expertise to analyze and interpret the testimony elicited, it may not use that expertise as a substitute for evidence (*see, Matter of Cohen v Ambach, supra,* at 498). Notably, the Hearing Panel's findings that petitioner lacked knowledge of pharmacology and the signs of infection are not supported by expert evidence in the record; Rogove was never questioned regarding these matters. However, upon our review of the record we conclude that the Hearing Panel did not substitute its expertise for evidence in concluding that petitioner placed the patient on inappropriate medication and that he deviated from the standard of podiatric care in failing to perform an X ray or bone scan because, as noted, Rogove's testimony and the rest of the record provided ample support for these findings.

Accordingly, the determination should be confirmed.

Mikoll, J. P., Crew III, Yesawich Jr. and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.