■ In the Matter of EUGENE SCHWALBEN, Petitioner, v BARBARA DeBUONO, as Commissioner of Health, et al., Respondents. [696 NYS2d 262] —Crew III, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of the State Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

In December 1997 petitioner, a licensed physician engaged in the practice of obstetrics and gynecology, was served with an amended statement of charges setting forth various specifications of misconduct stemming from his care and treatment of a patient on October 31, 1995 and November 21, 1995. At the conclusion of the administrative hearing that followed, during the course of which certain specifications of misconduct were withdrawn, a Hearing Committee of the State Board for Professional Medical Conduct found that petitioner had practiced the profession with gross negligence and gross incompetence based upon, *inter alia*, his failure to adequately evaluate and diagnose the patient's ectopic pregnancy during the course of the November 21, 1995 office visit. Additionally, the Hearing Committee determined, based upon the foregoing incident and petitioner's treatment of the patient during the initial October 31, 1995 office visit, that petitioner had practiced with negligence and incompetence on more than one occasion. Finally, after finding that petitioner had, among other things, lied to a State investigator regarding his privileges at a local hospital, the Hearing Committee sustained the specifications charging petitioner with practicing medicine fraudulently and moral unfitness to practice the profession. The Hearing Committee thereafter revoked petitioner's license to practice medicine, and this proceeding pursuant to CPLR article 78 to challenge that determination ensued.

As a starting point, we reject petitioner's assertion that the record as a whole does not contain substantial evidence to support the determination that he practiced the profession with gross negligence and gross incompetence with respect to the November 21, 1995 office visit. Even accepting that petitioner, after examining the patient, indeed summoned an ambulance to transport her to a local hospital and, further, crediting petitioner's testimony regarding the length of time that elapsed between his initial examination of the patient on that date and her eventual transport to a local hospital by a member of the New York City Police Department, the record nonetheless makes plain that petitioner failed to adequately stabilize the patient prior to transport.

In this regard, petitioner acknowledged that the patient presented in his office on November 21, 1995 with "exquisite" abdominal pain and some vaginal staining or bleeding, as a result of which he suspected that the patient was suffering from an ectopic pregnancy. Additionally, petitioner testified that the patient experienced momentary dizziness during this visit, which indicated to him the possibility that the ectopic pregnancy had indeed ruptured. On this point, petitioner testified, "If she ruptured an ectopic, she was hemorrhaging internally. If she lost enough blood, she would go into shock." Despite this realization, petitioner placed the patient in a police cruiser without establishing an intravenous line or making any effort to stabilize her condition prior to transport. Under such circumstances, we find that the record is sufficient to support the finding that petitioner practiced with gross negligence and gross incompetence with regard to the November 21, 1995 office visit.

We reach a contrary conclusion, however, with respect to the finding that petitioner practiced with negligence and incompetence on more than one occasion. Simply stated, the record is devoid of any evidence regarding the adequacy of the care or treatment rendered by petitioner to the patient during the course of the October 31, 1995 office visit which, according to petitioner, consisted of a brief pelvic examination, at the conclusion of which he declined to terminate the patient's pregnancy. Although the patient testified that petitioner indeed performed an abortion on that date, the Hearing Committee expressly discounted the patient's testimony in this regard and found that petitioner did not terminate the patient's pregnancy during this office visit. As the testimony offered by the physician appearing on behalf of the State Board for Professional Medical Conduct was premised upon the fact that such an abortion

indeed occurred, it necessarily follows that such testimony cannot be sufficient to sustain the charges at issue. Moreover, although petitioner conceded that he did not provide counseling to the patient during this initial office visit and that no real records of such visit were maintained, there was no expert testimony adduced at the hearing to establish that these admitted deficiencies constituted negligence and/or incompetence under the circumstances. Accordingly, the Hearing Committee's findings that petitioner practiced with negligence and incompetence on more than one occasion cannot stand.

The remaining arguments advanced by petitioner do not warrant extended discussion. Based upon a review of the dispatch tapes and corresponding testimony, the Hearing Committee could properly conclude that petitioner falsely stated that he summoned an ambulance via 911 when the patient's condition deteriorated during the November 21, 1995 office visit. Additionally, there was more than sufficient evidence in the record to establish that petitioner made false statements to a State investigator regarding the status of his hospital privileges. Accordingly, we decline to disturb the Hearing Committee's findings as to the charges of moral unfitness and practicing the profession fraudulently. Nor are we persuaded, based upon our review of the record as a whole, that petitioner was denied due process and/or a fair hearing. As to the issue of penalty, the Hearing Committee's determination does not specify whether petitioner's license to practice medicine was revoked upon each specification of misconduct or upon the cumulative effect of the sustained charges. Under such circumstances, we have no choice but to annul the penalty and remit this matter to respondents for a redetermination thereof (compare, Matter of Gold v Chassin, 215 AD2d 18, 24, lv denied 87 NY2d 805, with Matter of Sharma v Sobol, 188 AD2d 833, 836).

Cardona, P. J., Spain, Graffeo and Mugglin, JJ., concur. Adjudged that the determination is modified, on the law, without costs, by annulling so much thereof as found petitioner guilty of practicing medicine with negligence on more than one occasion (fifth specification) and practicing medicine with incompetence on more than one occasion (sixth specification); petition granted to that extent and such specifications dismissed, penalty annulled and matter remitted to respondents for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.