■ In the Matter of VICTOR HO, Petitioner, v ANTONIA C. NOVELLO, as Commissioner of Health of the State of New York, Respondent. [810 NYS2d 586]—

Peters, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which suspended petitioner's license to practice medicine in New York, stayed the suspension and placed petitioner on probation.

Petitioner is a neurosurgeon who has been licensed to practice medicine since July 1979. In December 1999, patient A went to the Staten Island University Hospital (hereinafter SIUH) with complaints of blurred vision, numbness, tingling and speech dysarthria. Patient A had a history of breast cancer and, as a result of tests taken upon her admission, lesions were found both on her lung and in the right frontal area of her brain. Petitioner was called in as a consultant. After his review of the preliminary testing, he performed a craniotomy for diagnostic purposes on December 8, 1999. At the time of the biopsy, respondent found the lesion and sent some of its tissue to pathology for a frozen section; the pathologist could not ascertain any definite pathologic tissue. Respondent removed more tissue, completed the biopsy and sent the new sample to pathology. While a later report revealed the presence of abnormal cells, pathology could not conclusively establish whether the lesion was cancerous. The tissue was thereafter sent to another institution for further evaluation. The second pathologist also could not reach a diagnosis from the tissue extracted and suggested that consideration be given to a resampling. Despite receiving these reports, as well as later scans and diagnostic tests, petitioner did not offer patient A the option of resampling, instead continuing with a plan of periodic observation while her status deteriorated. On January 13, 2000, petitioner performed another craniotomy. This time, he found a tumor in the same place which had now grown significantly in size. Patient A was ultimately diagnosed with metastatic lung cancer.

A notice of hearing and statement of charges were filed against petitioner by the Bureau of Professional Medical Conduct (hereinafter BPMC) of the Department of Health. After eight days of hearings, two allegations were sustained with respect to patient A—petitioner was negligent in failing to offer patient A additional alternatives following the nondiagnostic result of the first craniotomy and was negligent in ignoring patient A's deterioration when he had an ongoing responsibility for her care. Finding these allegations sufficient to constitute a charge of negligence on more than one occasion, the Hearing Committee of the State Board for Professional Medical Conduct found petitioner guilty of professional misconduct (see Education Law § 6530 [3]). A two-year suspension was stayed and petitioner was placed on probation. The determination was appealed to the Administrative Review Board for Professional Medical Conduct (hereinafter ARB), which affirmed the Hear-

ing Committee's findings regarding patient A. This CPLR article 78 proceeding was thereafter commenced.[1]

It is by now settled that if the ARB's decision has a rational basis and is supported by substantial evidence, it will be sustained (*see Matter of Tulier-Pastewski v State Bd. for Professional Med. Conduct*, 13 AD3d 918, 919 [2004]; *Matter of Buckner v State Bd. for Professional Med. Conduct*, 7 AD3d 840, 841 [2004]). Here, the evidence had to show that petitioner failed to "exercise the care that a reasonably prudent physician would exercise under the circumstances" (*Matter of Bogdan v New York State Bd. for Professional Med. Conduct*, 195 AD2d 86, 88 [1993], *appeal dismissed and lv denied* 83 NY2d 901 [1994]; *see Matter of Tulier-Pastewski v State Bd. for Professional Med. Conduct, supra* at 919); conflicting testimony simply creates a credibility issue (*see id.; Matter of Buckner v State Bd. for Professional Med. Conduct, supra* at 842; *Matter of Weisenthal v New York State Bd. of Regents*, 249 AD2d 712, 714 [1998], *lv denied* 92 NY2d 808 [1998]).

On behalf of the BPMC, testimony was received from George Tyson, a neurosurgeon. He reviewed the first craniotomy procedure, including the information obtained from the initial pathology report, along with all other later pathology and diagnostic reports. He concluded that the nondiagnostic results necessitated petitioner to inform patient A of the inconclusive results and offer her options to obtain a diagnostic sample. Tyson opined that petitioner's failure to do so rendered his care for patient A below the requisite standard of care.

Tyson next reviewed petitioner's treatment concerning patient A at the end of December 1999, after an MRI revealed that patient A's lesion had grown in size and was surrounded by a swelling of the brain. Tyson testified that this development demanded that petitioner inform patient A of the situation and offer another operation for diagnostic purposes. Tyson further testified that a follow up CT scan on January 3, 2000 showed that the lesion had grown to a point where the brain was significantly displaced and that such increased size and associated swelling was unlikely due to a hemorrhage as petitioner suspected. Tyson testified that a reasonably prudent neurosurgeon would have offered patient A another operation with the understanding that, although it presented risks, "there really isn't much hope . . . if she doesn't have an operation"; he found

---

**1.** Initially, multiple charges were brought against petitioner concerning three patients. While the Hearing Committee sustained charges with respect to two of the patients, the ARB dismissed the charges concerning the second patient. Accordingly, this proceeding concerns only patient A.

no indication that this offer was made. For these reasons, he concluded that petitioner's care and treatment of patient A did not meet acceptable medical standards. Also testifying for the BPMC was Patricia Roche, a radiologist and neuroradiologist, who confirmed Tyson's testimony as to the indicators presented by the varied diagnostic reports.

Petitioner proffered the testimony of numerous expert witnesses, all of which were found to be credible. Petitioner also testified on his own behalf; the Hearing Committee found him to be "very arrogant, condescending and unwilling to own up to his mistakes." Petitioner contended that since patient A was admitted to SIUH under another physician's care at the beginning of January 2000—the time period covering much of the allegations included in the second charge—other doctors were responsible for her care.[2] He also contended that he had discussed patient A's status and options with her and her family at various points during his treatment.

Addressing petitioner's first contention regarding patient A's admission to SIUH under another physician's care at the beginning of January 2000, it is clear that petitioner's treatment of patient A prior to that point was sufficient to sustain the charge against him based upon Tyson's testimony (*see Matter of Yong-Myun Rho v Ambach*, 74 NY2d 318, 322-323 [1989]; *Matter of Bell v New York State Dept. of Health*, 291 AD2d 744, 746 [2002]). Tyson noted that, by that time, another pathologist had recommended resampling due to the failure to obtain diagnostic material, and the growing lesion, revealed by the numerous CT scans, should have increased petitioner's suspicion of an underlying malignant tumor and not a recurring hemorrhage; observation was simply inappropriate in light of the fact that patient A was dysarthric, had seizures and had trouble moving her left hand. Also, the doctor that did admit patient A to SIUH during the time period covered by the second charge was the neurologist in petitioner's small office. That neurologist found patient A unable to stand or ambulate on her own whereas petitioner's neurological examination, on that same day, resulted in his determination that she was clinically stable. That afternoon patient A was admitted to SIUH. Moreover, despite petitioner's second contention that he interacted with patient A and her family regarding the various options at numerous opportune times, his testimony was inconsistent and no documentation supported his contentions. As the evaluation of petition-

---

2. While Tyson was not aware of patient A's admission to SIUH under another doctor's care at the time of his testimony, this information was before the Hearing Committee before it made its determination.

er's credibility was rightly before the ARB for its factual determination (*see Matter of Tulier-Pastewski v State Bd. for Professional Med. Conduct*, 13 AD3d 918, 919 [2004], *supra*; *Matter of Buckner v State Bd. for Professional Med. Conduct*, 7 AD3d 840, 842 [2004], *supra*; *Matter of Weisenthal v New York State Bd. of Regents*, 249 AD2d 712, 714 [1998], *supra*), we have no basis to disturb the determination rendered by the ARB since it has a rational basis.

Mercure, J.P., Crew III, Mugglin and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

