[908 NYS2d 552]

Ngoc Cipriano, Plaintiff, v Victor T. Ho, M.D., et al., Defendants.

Supreme Court, Kings County, September 29, 2010

## APPEARANCES OF COUNSEL

*Paul E. Walker* for defendants. *Russell S. Berman* for plaintiff.

## OPINION OF THE COURT

JACK M. BATTAGLIA, J.

At trial of this medical malpractice action, defendant Victor T. Ho, M.D. moved to preclude plaintiff Ngoc Cipriano from any use of evidence of disciplinary action taken against him by the New York State Department of Health. For the reasons that follow, the court granted the motion to the extent that plaintiff was precluded from using the disciplinary action as evidence-in-chief on her claims of professional negligence, including her claim of lack of informed consent, but plaintiff was permitted to use the disciplinary action to impeach Dr. Ho's credibility.

The Bureau of Professional Medical Conduct (BPMC) of the Department of Health brought charges of professional misconduct against Dr. Ho concerning three patients. On June 26, 2004, the Hearing Committee of the State Board for Professional Medical Conduct found Dr. Ho guilty of professional misconduct for "[p]racticing the profession with negligence on more than one occasion" (*see* Education Law § 6530 [3]), but rejected charges of "[p]racticing the profession with incompetence on more than one occasion" (*see* Education Law § 6530 [5]).

Stating in its determination and order (at 22) that it was "troubled by [Dr. Ho's] attitude that he cannot own up to his mistakes," and that "when [his] judgment is questioned, he tends to blame others," the Hearing Committee ordered that Dr. Ho's license to practice medicine in New York State be suspended for a period of two years, stayed the suspension, and placed Dr. Ho's license on probation. The Hearing Committee "believe[d] that a two year stayed probation [would] deter [Dr. Ho] from side-stepping total responsibility for patients under his care and promote requisite accountability," and was "commensurate with the level and nature of [his] professional misconduct" (Hearing Committee determination and order at 23).

In July 2004, both the BPMC and Dr. Ho appealed the Hearing Committee determination and order to the Administrative

Review Board for Professional Medical Conduct (ARB). Under the governing statute, the appeals stayed the penalty imposed by the Hearing Committee until the ARB rendered its determination. (*See* Public Health Law § 230-c [4] [a].) On January 17, 2005, the ARB affirmed the Committee's determination of professional misconduct, and sustained the penalty imposed. The penalty was further stayed until March 15, 2005, pending review by the Third Department of the ARB's determination, where it was upheld. (*See Matter of Ho v Novello*, 27 AD3d 908 [3d Dept 2006].)

Plaintiff's claims relate to surgery Dr. Ho performed on her spine on November 10 and November 24, 2004—that is, after the Hearing Committee's June 24, 2004 determination of professional misconduct, but before the ARB's affirmance of that determination, while the "penalty" imposed by the Hearing Committee was stayed (*see* Public Health Law § 230-c [4] [a]). Plaintiff continued to see Dr. Ho during the pendency of his appeal to the Third Department, while the penalty was judicially stayed, but not after the stay was lifted on March 15, 2005.

Informed Consent

In separate expert witness disclosure statements served by plaintiff pursuant to CPLR 3101 (d), a neurosurgeon and a neurologist stated an opinion that Dr. Ho departed from good and accepted medical practice "in failing to advise plaintiff that license was under suspension and Dr. Ho's medical license was on probation during both surgeries for plaintiff to make an informed decision on whether to use Dr. Ho to perform surgery."

For purposes of a medical malpractice claim based on lack of informed consent,

> "[l]ack of informed consent means the failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical . . . practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation." (Public Health Law § 2805-d [1].)

The court has not found any opinion addressing whether the failure to disclose a determination of professional misconduct or related penalty may support an action based upon lack of informed consent if there is expert opinion that the failure to disclose constitutes a departure from good and accepted medical practice.

Courts have held, however, that "informed consent does not require disclosure of the *qualifications* of personnel providing the professional treatment." (*See Johnson v Jacobowitz*, 65 AD3d 610, 614 [2d Dept 2009] [emphasis added] [lack of "proper credentials to perform the heartport procedure"]; *see also Abram v Children's Hosp. of Buffalo*, 151 AD2d 972, 972 [4th Dept 1989] ["a nurse anesthetist and/or a student physician and/or a resident in obstetrics and gynecology were to participate vitally in the administration of anesthetic"]; *Zimmerman v New York City Health & Hosps. Corp.*, 91 AD2d 290, 291 [1st Dept 1983] [surgery performed by fourth-year resident]; *Henry v Bronx Lebanon Med. Ctr.*, 53 AD2d 476, 481 [1st Dept 1976] [baby delivered by second-year resident].)

As noted, none of these decisions involve a claim based upon disciplinary action. But the rationale for decisions after the informed consent statute became effective in 1975 supports the conclusion that a claim cannot be based upon disciplinary action. "This statute was enacted to limit the doctrine of informed consent as it had developed in case law." (*Abram v Children's Hosp. of Buffalo*, 151 AD2d at 972.) The definition of informed consent "covers disclosure of alternatives to treatment, and risks and benefits involved in treatment; it cannot reasonably be read to require disclosure of qualifications of personnel providing that treatment." (*Id.*)

Admittedly, "professional misconduct" and "qualifications" are not the same thing. But the Education Law contains 49 numbered "definitions" of "professional misconduct" (*see* Education Law § 6530), many of which suggest little, if any, "risk" of diagnosis or treatment, such as "[f]ailing to wear an identifying badge" (*see* Education Law § 6530 [37]) and "[k]nowingly or willfully performing a complete or partial autopsy on a deceased person without lawful authority" (*see* Education Law § 6530 [41]).

In this case, moreover, there would be questions as to the significance of a stayed suspension with probation, of the statutory stay pending ARB appeal of the Hearing Committee's determination, of a judicial stay pending appeal to the Appellate Division, and the relationship to what "a reasonable medical . . . practitioner under similar circumstances would have disclosed" (*see* Public Health Law § 2805-d [1]). Neither the informed consent statute (*see id.*) nor the statutory provisions on proceedings for professional medical conduct (*see* Public Health Law § 230 *et seq.*) clearly answers the questions. (*See for example*

*Matter of Caselnova v New York State Dept. of Health*, 91 NY2d 441 [1998].)

It seems reasonably clear in this case, however, that the disciplinary proceedings against Dr. Ho could not fairly be considered concluded until the ARB determination on January 17, 2005, well after plaintiff's November 2004 surgeries. While the penalty was stayed pending administrative review (*see* Public Health Law § 230-c [4] [a]), the ARB was statutorily directed to "review whether or not the [Hearing Committee's] determination and the penalty [were] consistent with the findings of fact and conclusions of law and whether the penalty [was] appropriate" (*see* Public Health Law § 230-c [4] [b]) and given the "authority to remand a case . . . for reconsideration or further proceedings" (*see id.*). Here, although the Hearing Committee found that Dr. Ho had practiced negligently with respect to two patients, the ARB dismissed the charges concerning one of the patients.

To the extent that plaintiff may have been treated by Dr. Ho after January 17, 2005, there is insufficient evidence of causal connection between that treatment and her alleged injuries. In any event, the decision of the ARB was stayed by the Third Department until after Dr. Ho's treatment of plaintiff ceased on March 8, 2005. The judicial stay must be presumed to have complied with the statutory direction that "such decisions shall not be stayed or enjoined except . . . upon a showing that the petitioner has a substantial likelihood of success" (*see* Public Health Law § 230-c [5]).

Knowledge, Skill, and Reasonable Care

Plaintiff contends, however, that evidence of the disciplinary action against Dr. Ho may yet be used on her claim of malpractice generally.

"A physician and surgeon, by taking charge of a case, impliedly represents that he possesses, and the law places upon him the duty of possessing, that reasonable degree of learning and skill that is ordinarily possessed by physicians and surgeons in the locality where he practices, and which is ordinarily regarded by those conversant with the employment as necessary to qualify him to engage in the business of practicing medicine and surgery. Upon consenting to treat a patient, it becomes his duty to use reasonable care and diligence in the exercise of his skill and the application of his learn-

ing to accomplish the purpose for which he was employed. He is under the further obligation to use his best judgment in exercising his skill and applying his knowledge. The law holds him liable for an injury to his patient resulting from want of the requisite knowledge and skill, or the omission to exercise reasonable care, or the failure to use his best judgment." (*Pike v Honsinger*, 155 NY 201, 209 [1898]; *see also Anderson v House of Good Samaritan Hosp.*, 44 AD3d 135, 139 [4th Dept 2007]; *Lee v City of New York*, 162 AD2d 34, 35 [2d Dept 1990].)

The distinction between incompetence and negligence is recognized in the law governing professional medical conduct. (*See Matter of Dhabuwala v State Bd. for Professional Med. Conduct*, 225 AD2d 209, 213 [3d Dept 1996].) "Negligence is applicable to an act or omission of a physician which constitutes a breach of the duty of care whereas incompetence is directed to the lack of the requisite knowledge or skill in the performance of an act." (*Id.* [internal quotation marks and brackets omitted].)

Here, although Dr. Ho was charged with both incompetence and negligence, the Hearing Committee dismissed the charge of incompetence. For the Hearing Committee and ARB to properly uphold the charge of negligence, "the evidence had to show that [he] failed to 'exercise the care that a reasonably prudent physician would exercise under the circumstances.'" (*See Matter of Ho v Novello*, 27 AD3d at 910.)

CPLR 4504 (d) provides,

"In any action for damages for personal injuries or death against a person not authorized to practice medicine under article 131 of the education law for any act or acts constituting the practice of medicine, when such act or acts were a competent producing proximate or contributing cause of such injuries or death, the fact that such person practiced medicine without being so authorized shall be deemed prima facie evidence of negligence."

There is little case law under this provision, and none addresses disciplinary action against a licensed physician. It has been held, however, that evidence that a defendant is "unlicensed" is not evidence that she was "not authorized to practice medicine" for purposes of CPLR 4504 (d). (*See Ellenberger v Pena*, 88 AD2d 373, 377-378 [2d Dept 1982].)

Here, even ignoring the statutory and judicial stays, it cannot be said that Dr. Ho was "not authorized to practice medicine" when he treated plaintiff. The Committee itself stayed the two-year suspension of Dr. Ho's license, and the penalty of probation permitted him to practice subject to the specified terms.

Plaintiff points to Public Health Law § 10 (2), providing in effect that the "written reports" of Department of Health investigations "shall be presumptive evidence of the facts so stated therein, and shall be received as such in all courts and places." The court will assume that, if otherwise properly rendered admissible as evidence (see CPLR 4540), had the Hearing Committee and ARB written determinations here concerned Dr. Ho's treatment of plaintiff, the findings of fact contained therein, but not the opinions or conclusions of law, would be admissible as presumptive evidence of those facts. (See Colao v St. Vincent's Med. Ctr., 65 AD3d 660, 661 [2d Dept 2009]; Cramer v Benedictine Hosp., 301 AD2d 924, 927 [3d Dept 2003]; Maldonado v Cotter, 256 AD2d 1073, 1074-1075 [4th Dept 1998].)

Where, however, a plaintiff has sought to introduce findings of the Office of Professional Medical Conduct of negligent acts of a malpractice defendant that are unrelated to the plaintiff's case, the court has refused. (See Torres v Ashmawy, 24 Misc 3d 506, 508-511 [Sup Ct, Orange County 2009]; Maraziti v Weber, 185 Misc 2d 624, 626 [Sup Ct, Dutchess County 2000]; see also Dooley v Columbia Presbyt. Med. Ctr., 2009 WL 2381331, *2, 2009 US Dist LEXIS 66369, *4-7 [SD NY 2009].) Such findings "would be of marginal relevance at best, but would be likely to unduly prejudice the jury," "turning some trials into a distracting series of mini-trials" on the significance of the findings in the unrelated cases. (See Maraziti v Weber, 185 Misc 2d at 626.) "A general rule of evidence, applicable in both civil and criminal cases, is that it is improper to prove that a person did an act on a particular occasion by showing that he did a similar act on a different, unrelated occasion." (Matter of Brandon, 55 NY2d 206, 210-211 [1982]; see also Torres v Ashmawy, 24 Misc 3d at 511.)

Impeachment

There remains, then, the question of whether a medical malpractice plaintiff may seek to impeach a defendant doctor with questioning regarding disciplinary action taken against the doctor. There is no appellate authority directly on point.

Recently, in Castillo v 62-25 30th Ave. Realty, LLC (74 AD3d 1116 [2d Dept 2010]), the Second Department held that a

"trial court improvidently exercised its discretion in precluding the defendants from questioning the plaintiff's treating orthopedist regarding the underlying factual allegations that led to the suspension of his license to practice medicine, a topic which would have had a bearing on his credibility if called to testify by the plaintiff." (*See id.* at 1117; *see also Williams v Halpern*, 25 AD3d 467, 468 [1st Dept 2006] [plaintiff's expert pathologist's "suspensions of his license bear on his credibility"]; *Spanier v New York City Tr. Auth.*, 222 AD2d 219, 219 [1st Dept 1995] [plaintiff's treating physician's "allegations of improper billing, and other misconduct . . . had a bearing on the doctor's credibility"]; *Alonso v Powers*, 220 AD2d 311, 311 [1st Dept 1995] [plaintiff's expert's "suspensions from the practice of medicine"].)

The Court in *Castillo* (at 1117) cited in support *Badr v Hogan* (75 NY2d 629 [1990]), where the Court of Appeals stated the "general rule that a witness may be cross-examined with respect to specific immoral, vicious or criminal acts which have a bearing on the witness's credibility" (*id.* at 634). "While the nature and extent of such cross-examination is discretionary with the trial court . . . , the inquiry must have some tendency to show moral turpitude to be relevant on the credibility issue." (*See id.*) In *Torres v Ashmawy* (24 Misc 3d 506 [2009]), the Supreme Court allowed a malpractice defendant to be cross-examined on "administrative proceedings, findings and determination[s]" of the Board for Professional Medical Conduct "to the extent [they] relate to the sustained findings of fraudulent practice," but not as they related to "sustained specifications of gross negligence, gross incompetence, negligence, incompetence, and the failure to keep adequate patient records" (*see id.* at 511-512).

The inquiry is "[w]hether the probative worth of evidence . . . on the issue of credibility outweighs the risk of unfair prejudice" (*see Matter of Carlos V.*, 192 AD2d 661 [2d Dept 1993]; *see also Matter of Jessica Y.*, 206 AD2d 598, 599 [3d Dept 1994] ["the issue of credibility outweighed the risks of unfair prejudice"]). Although not entirely clear from the case law, the fact alone of disciplinary action against a physician does not appear sufficient to permit its use on cross-examination, but rather the underlying findings and determinations must be probative on the issue of credibility, and weighed as such against the possibil-

ity of prejudice. It is not necessary that the findings and determinations be probative of malpractice as alleged in the action before the court. As to probative weight on credibility, there seems no difference whether the witness is a treating physician or expert, as in all of the decided appellate cases, or a defendant physician in a malpractice action. As to probative weight on credibility, sustained findings that justify the penalty imposed may be at least as significant as the findings of professional misconduct.

Here, the court could not give sufficient, if any, probative value to the findings and determinations as to negligence in Dr. Ho's treatment of a single patient on more than one occasion. Without more, negligent acts or omissions do not "tend[ ] to show moral turpitude" (see Badr v Hogan, 75 NY2d at 634).

Disciplinary action includes a penalty, however, and stated grounds for the penalty imposed. The Hearing Committee or ARB might justify a penalty with a determination that bears directly on credibility (see Torres v Ashmawy, 24 Misc 3d at 509 [revocation of license: "(n)ot only did Respondent practice grossly substandard medicine, he lied about it then and he continues to lie about it today"]) or with a determination that does not directly bear on credibility, but on a deficiency in moral character (see Matter of Sidoti v State Bd. for Professional Med. Conduct, 55 AD3d 1162, 1166-1167 [3d Dept 2008] [revocation of license: physician "evinc(ed) an indifference or lack of insight to the consequences of his actions" and "demonstrated lack of insight or remorse"]).

Here, the penalty imposed by the Hearing Committee and upheld by the ARB—a stayed two-year suspension of Dr. Ho's license with probation—is not among the most serious that could be imposed, i.e., license revocation and fines, nor was it among the least serious, i.e., reprimand, further training and education. (See Public Health Law § 230-a; see also generally Matter of Caselnova v New York State Dept. of Health, 91 NY2d 441 [1998].) The ARB noted that the Committee "found the Respondent unable to admit mistakes," "faulted the Respondent for also trying to shift blame for [a] complication to another physician," and "concluded that the stayed suspension and probation would deter the Respondent from sidestepping total responsibility for his patients and promote requisite accountability." (ARB Determination and Order No. 04-146, at 3.) The ARB rejected the BPMC's request that the penalty be changed from stayed suspension/probation to revocation; the BPMC

argued that "probation cannot teach the Respondent character and responsibility and . . . only revocation will protect the public." (*Id*. at 4.)

One might fairly argue over whether these findings and conclusions bear directly on Dr. Ho's credibility or are better characterized as deficiencies in moral character. It is sufficient that they reveal "a willingness or disposition" on the part of Dr. Ho "to place the advancement of his individual self-interest ahead of principle or of the interests of society." (*See People v Walker*, 83 NY2d 455, 461 [1994]; *see also People v Lewis*, 73 AD3d 495, 496 [1st Dept 2010]; *People v Williams*, 49 AD3d 672, 673 [2d Dept 2008].)

The court concluded, therefore, that the disciplinary action taken against Dr. Ho was probative of his truthfulness in testifying at this trial. The issue then became whether allowing plaintiff to cross-examine him on the subject would create "*undue* prejudice," something more than "the expected—and, indeed, intended—negative impact that naturally flows from evidence admitted for the purpose of impeachment" (*see People v Walker*, 83 NY2d at 463), recognizing that "[l]ike any other form of impeachment evidence, the probative worth of this class of evidence may effectively be challenged through such conventional methods as explanation and rehabilitation" (*see id*.).

The court further concluded that in the circumstances presented here, as will be described, there would be no undue prejudice in allowing plaintiff's counsel to cross-examine Dr. Ho as to the disciplinary action taken against him. Since, at his deposition, Dr. Ho acknowledged the disciplinary action, the court was not required to address whether the ARB's determination and order would be admissible should he refuse to acknowledge it at trial. (*See Spanier v New York City Tr. Auth*., 222 AD2d at 219-220.)

Defendant's motion to preclude was first made at trial, after the jury was selected and the trial was to begin. Perhaps to avoid delay that would have resulted from a continuance to allow the court to give proper deliberation to the motion, plaintiff's counsel offered not to mention the disciplinary action in his opening statement, and not to question Dr. Ho on it during Dr. Ho's testimony on plaintiff's direct case as plaintiff's first witness.

Under these circumstances, defendant, therefore, would have the opportunity to first put the matter before the jury when Dr. Ho testified on his own case in defense, accompanied by the

court's instruction to the jury on the limited use to which the jury could make of the information. The scope of plaintiff's counsel's questioning on cross would be determined by the court after defendant's counsel's direct.

After the court's ruling, however, before Dr. Ho's testimony, the parties reached a high/low settlement, including plaintiff's agreement not to question Dr. Ho or make any statement to the jury concerning the disciplinary action.