LENA G. AUSTIN, Respondent, *v.* RUSH BARTLETT, Appellant.

1. EVIDENCE — WHEN DECLARATIONS INADMISSIBLE AS PART OF THE RES GESTÆ. In an action brought to recover damages for injuries caused by the alleged negligence of the defendant in keeping a savage dog, in which the ownership of the dog was one of the issues, self-serving declarations made shortly after the accident by the plaintiff, in the absence of the defendant, to the effect that it was his dog and not that of his tenant which frightened her horse, is a mere narration of a past transaction inadmissible as part of the *res gestæ* or for any purpose.

2. INADMISSIBILITY OF EVIDENCE TENDING TO EXCITE THE SYMPATHY OF THE JURY. Evidence that after learning of the accident the defendant did not call upon the plaintiff, is inadmissible for any purpose — whether or not he acted in a neighborly way was immaterial, and its only effect could be to arouse the sympathy or prejudice of the jury.

*Austin* v. *Bartlett,* 67 App. Div. 312, reversed.

(Argued April 5, 1904; decided April 26, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 27, 1902, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict and affirming an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William Kernan* and *Charles D. Thomas* for appellant. The conversation between Henry Hinckley and ·the plaintiff, objected to by defendant and admitted and retained in the case by the court, was clearly incompetent and improper and it was error to receive it. ( *Waldele* v. *N. Y. C. & H. R. R. R. Co.,* 95 N. Y. 274; *Martin* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y. 626; *Sherman* v. *D., L. & W. R. R. Co.,* 106 N. Y. 542; *Root* v. *Borst,* 142 N. Y. 62; *Anderson* v. *R., W. & O. R. R. Co.,* 54 N. Y. 334; *Carpenter* v. *Ward,* 30 N. Y. 243; *Kay* v. *M. S. Ry. Co.,* 163 N. Y. 447.) Evidence introduced for the sole and only purpose of prejudicing the defendant in the minds of the jurors and to awaken their sympathy for the plaintiff was erroneously admitted. (*Ander-*

*son* v. *R.*, *W. & O. R. R. Co.*, 54 N. Y. 334; *Hutchins* v. *Hutchins*, 98 N. Y. 56; *Lipp* v. *Otis Bros. & Co.*, 161 N. Y. 559; *Cudlip* v. *N. Y. E. Journal*, 171 N. Y. 158.)

*P. C. J. De Angelis* for respondent.

VANN, J.   The plaintiff alleged in her complaint that on and for a long time prior to the fourth of September, 1889, the defendant kept on his farm in the town of Winfield, Herkimer county, a savage dog, which, to his knowledge, was accustomed to rush out and bite horses passing along on the public highway.   At about sundown on the day last named, while she was driving on the street in front of the defendant's residence, said dog flew out and bit her horse, causing him to run away and throw her out, whereby she was seriously injured. The defendant denied every allegation of the complaint and alleged that the plaintiff, when slightly injured by an accident for which he was not responsible, aggravated her injuries by voluntarily submitting to treatment by unskillful and unprofessional attendants.   There was much evidence to support the allegations of the complaint and some tending to show that the dog which bit the horse belonged to one Henry Hinckley, a tenant of the defendant, who resided about sixty-five rods from him, but on the same farm.   The question as to the ownership of the dog that did the mischief was submitted to the jury with the other questions in the case, and a verdict was rendered in favor of the plaintiff for the sum of $8,000.   Upon appeal the Appellate Division reversed the judgment and ordered a new trial, unless the plaintiff should stipulate to reduce the recovery to $4,000, in which event it was directed that the judgment should be affirmed, without costs of the appeal to either party.   The plaintiff filed a stipulation accordingly, whereupon the judgment, as thus modified, was unanimously affirmed, and the defendant, after obtaining permission, came here.

During the trial much evidence was received, subject to objection and exception on the part of the defendant, and two of the rulings involve reversible error.

1. It appeared that the horse, after he was frightened by the dog, ran into the barnyard of the defendant, where the plaintiff was thrown out and injured. Shortly after the accident she led her horse home, a distance of about 120 rods, and put him in the stable. At this time she did not suppose her injuries were serious and, missing her pocket book, she procured a lantern, as it was then dark, and about thirty minutes after the accident went back to the place where it occurred. She found the pocket book and was walking home when Henry Hinckley overtook her and walked along with her as far as his house. She testified that during this walk she blew out her lantern, withdrew to the shelter of some trees, pulled down her stocking and examined her knee to see if it was hurt. Mr. Hinckley was called for the defendant and on his direct examination, after giving other evidence, denied this story of the plaintiff, but he did not swear to any conversation that he had with her during the walk. On his cross-examination, however, the plaintiff went into the conversation and called for his version of what was said between herself and the witness in relation to which dog frightened the horse. His account was unsatisfactory as the counsel for the plaintiff called her in rebuttal to contradict him and, subject to objection and exception, she was allowed to state her own declarations as well as those of Hinckley in relation to the two dogs, their habits, etc. Some of these declarations had been received without objection when the defendant moved " to strike out of the record what Hinckley has said about his dog or the habits of Bartlett's dog or of any dogs." The court thereupon remarked: "I think that will have to be stricken out. I will leave in the case a statement of whether he inquired whether his dog was engaged in it or not and that she said it was not." Exception was taken by the defendant's counsel.

Subject to the objection that the evidence was immaterial and incompetent and that the declaration could not affect the defendant, the plaintiff was allowed, under exception, to testify as follows: Q. "Did Hinckley say to you that 'If my dog was there, I will kill him?'" A. "Yes, sir." Q. "When,

did he say?" A. "He said he would kill him that night, he would not keep him another day." Q. "Did you reply to him, 'You need not kill your dog, because he did not do it?'" A. "Yes, sir, he was not there." The defendant also moved to strike out these questions and answers, but the court refused and he again excepted.

This evidence was received, as the trial justice remarked, "not on the ground that his declarations are competent against your man, but simply as a contradiction of Hinckley."

Assuming that the court could properly have refused to strike out the evidence received without objection, leaving the defendant to protect himself by a request to charge upon the subject, since the motion was entertained, a part of the evidence struck out and the rest allowed to stand, there was a distinct ruling that the portion remaining in the case was competent for the consideration of the jury. The exceptions taken to this ruling and to the allowance of the questions subsequently objected to raised the question whether evidence of declarations made in the absence of the defendant was competent against him. This evidence was not competent for the purpose of contradicting Hinckley, because he had not testified upon the subject at the instance of the defendant but only on the cross-examination of the plaintiff, who thus made him her own witness to that extent. (*Kay* v. *Metropolitan Street Ry. Co.*, 163 N. Y. 447, 451.) It is a general rule that statements made in the absence of a party by one who did not speak by his authority are incompetent. Self-serving declarations, made by the plaintiff when the defendant was not present to the effect that it was his dog and not Hinckley's that frightened the plaintiff's horse, were a mere narrative of a past transaction inadmissible as part of the *res gestæ*, or for any purpose. As this court once said : "The *res gestæ*, speaking generally, was the accident. These declarations were no part of that, were not made at the same time, or so nearly contemporaneous with it as to characterize it, or throw any light upon it. They are purely narrative, giving an account of a transaction not partly past, but wholly past and completed."

(*Waldele* v. *N. Y. C. & H. R. R. R. Co.*, 95 N. Y. 274,
278.)  What was said during the walk in nowise qualified or
characterized what was done, for it related to a different sub-
ject.  What was done by the plaintiff was competent evidence
for the defendant, as an act bearing upon the extent of her
injuries.  What was said either by her or by Hinckley related
to the cause of the injury and had no connection with the
extent thereof.  The defendant by showing what was done
did not open the plaintiff's mouth so that she could testify to
what was said upon a wholly different subject in the absence
of the defendant.  (*Martin* v. *N. Y., N. H. & Hartford R.
R. Co.*, 103 N. Y. 626 ; *Sherman* v. *D., L. & W. R. R. Co.*,
106 N. Y. 542, 546.)  In the case last cited the court said :
" It is perfectly evident that the conversation about which the
brakeman was interrogated on his cross-examination was a con-
versation after the accident had happened and was aimed at
drawing out a statement from the witness as to how the
accident had occurred or what caused it, and whose fault
it was.  That evidence was plainly inadmissible against the
defendant.   *   *   *   The evidence being in its nature
inadmissible, the plaintiff could not obtain the benefit of it
by cross-examining the brakeman in regard to it, and, upon
his denying it, seek to prove it by another witness under the
guise of contradicting the brakeman."  The ownership of the
dog that attacked the plaintiff's horse was a contested question
of fact which was submitted to the jury and declarations made
so soon after the accident, when the recollection was fresh
and mistake improbable, " must have had weight with them
in determining that question."  They naturally tended to
induce the jury to believe that the source of the trouble was
not Hinckley's dog but the defendant's, and we cannot
assume that the evidence was harmless or that it had no
material effect upon the verdict.

2. After the defendant had testified and had left the wit-
ness stand, he was recalled by the plaintiff for further cross-
examination and was asked how soon after the accident he
learned that she was hurt.  Subject to objection and excep-

tion, he answered that it was ten or twelve days. He was then asked: "Did you ever call upon her?" This was objected to as incompetent and immaterial, but the objection was overruled, an exception taken and the defendant answered: "No, sir, I was never inside the house but once."

Whether the defendant acted in a neighborly way or not toward the plaintiff after her misfortune, had no bearing upon the cause or effect of the injury and was clearly inadmissible for any purpose. It furnished no lawful aid to the jury but was calculated to lead them away from the issues and to arouse in their minds sympathy for the plaintiff and prejudice against the defendant. Prejudice and sympathy are dangerous elements in a lawsuit, and evidence, having as its sole object or effect an appeal to either is condemned by the courts. We recently reversed a judgment because evidence was received as to the number and needs of the relatives of a decedent, killed, as it was alleged, by the negligence of the defendant, although they were not entitled to any part of the recovery. (*Lipp* v. *Otis Brothers & Co.*, 161 N. Y. 559.) In another negligence case we reversed because a photograph of the deceased was received in evidence, thus introducing a personal element for the consideration of the jury. (*Smith* v. *Lehigh Valley R. R. Co.*, 177 N. Y. 379.) · Courts should be particularly careful to protect the rights of defendants in actions for personal injuries alleged to have been caused by negligence, because juries so frequently find negligence on insufficient grounds when the plaintiff has sustained a severe injury and their sympathies are awakened by suffering and misfortune. Whether the plaintiff's counsel made eloquent comments upon the unneighborly conduct of the defendant or not, the evidence was received and it was the duty of the jury to consider it, the same as the other evidence in the case, yet how could they consider it without doing the defendant an injustice? We cannot say that it did no harm when the jury found a verdict for an amount twice as large as the judges of the Appellate Division, with their control of the facts, thought was reasonable.

The judgment should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., O'BRIEN, BARTLETT, CULLEN and WERNER, JJ., concur; HAIGHT, J., absent.

Judgment reversed, etc.