[727 NYS2d 843]

VILLAGE OF HAMBURG, Appellant-Respondent, v AMERICAN REF-FUEL COMPANY OF NIAGARA, L.P., Respondent-Appellant. (Action No. 1.)

TOWN OF EDEN, Appellant-Respondent, v AMERICAN REF-FUEL COMPANY OF NIAGARA, L.P., Respondent-Appellant. (Action No. 2.)

Fourth Department, July 3, 2001

### APPEARANCES OF COUNSEL

*Connors & Vilardo,* Buffalo (*Lawrence J. Vilardo* of counsel), for appellants-respondents.

*Jaeckle Fleischmann & Mugel,* Buffalo (*Ralph L. Halpern* of counsel), for respondent-appellant.

### OPINION OF THE COURT

HURLBUTT, J.

The Village of Hamburg (Hamburg), the plaintiff in action No. 1, entered into a 25-year contract for refuse disposal services with defendant's predecessor, Occidental Chemical Corporation (Occidental), on March 1, 1989. That contract served as the prototype for contracts between Occidental and other municipalities, including the Town of Eden (Eden), the plaintiff in action No. 2, which entered into a contract with Occidental on January 23, 1991. Defendant acquired the Occidental refuse disposal facility and assumed Occidental's rights and duties under the subject contracts in May 1993. In the respective actions, each plaintiff seeks judgment declaring, *inter alia,* that its contract is unenforceable for lack of definiteness because it has no price term for the period beginning June 1, 1999. Plaintiffs each moved for summary judgment, and defendant cross-moved for summary judgment declaring that the contract in each action is valid and enforceable or, in the alternative, for discovery. Supreme Court denied plaintiffs' motions and granted defendant's cross motions only to the extent that they sought discovery.

On appeal, plaintiffs and defendant contend that the issue of the validity of the contracts is an issue of law for the court. We agree. We further agree with defendant that the parties' respective contracts do not fail for indefiniteness, and thus conclude that the court should have granted judgment in favor of defendant declaring that the contracts are valid and enforceable.

I

Because the Hamburg and Eden contracts are identically worded in all relevant respects, the issues in both actions may be resolved by reference to the Hamburg contract. That contract provides that Hamburg will deliver, and defendant will dispose of, Hamburg's solid waste materials for a period of 25 years, from June 1, 1989 to May 31, 2014. The compensation for defendant's refuse disposal services is fixed by

paragraph 6 of the contract, which provides that, for the period from June 1, 1989 through May 31, 1991, the price per ton of refuse is in the amount of the accepted bid proposal. Paragraph 6 further provides that, for the period from June 1, 1991 through May 31, 1994, the price per ton of refuse is to be computed by a formula comprised of the previous year's price plus or minus the sum of 50% of the consumer price index change and environmental cost changes and, for the period from June 1, 1994 through May 31, 1999, the price per ton of refuse is to be computed by the same formula as for the 1991 through 1994 period, using 100% of the consumer price index change. In addition, however, paragraph 6 provides that, for the period from June 1, 1999 through May 31, 2006, the price per ton of refuse is to be "determined by the GENERAL PRICE REVIEW that is to be undertaken in and completed by the end of 1994" and, finally, for the period from June 1, 2006 through May 31, 2014, the price per ton of refuse is to be determined using the same general price review, to be completed in 2001.

Paragraph 7 of the contract provides that the parties "shall meet to determine, in good faith, whether and to what extent, if any, the formula, cost factors and rates of future compensation payable to the Contractor pursuant to this Agreement should be revised, with any such revised rates of compensation to be in effect from June 1, 1999, until May 31, 2006. A similar general price review will be undertaken in the year 2001, with any revisions from said second general price review to be in effect from June 1, 2006, until May 31, 2014." Paragraph 7 further provides that "[a]ny and all price changes, including the general price review to be conducted first in 1994 and again in the year 2001, shall only be determined" either by mutual written agreement of the parties or by arbitration.

Although in 1994 and thereafter defendant engaged in negotiations with representatives of both Hamburg and Eden concerning price changes, no agreements were reached, nor were arbitration proceedings commenced. Plaintiffs contend that, by reason of the parties' failure to determine a price change either by agreement or arbitration, the contracts lack a price term for the period beginning June 1, 1999 and are therefore invalid for indefiniteness. Defendant contends that the result of the parties' failure to determine a price change is merely that the parties must continue to perform at the price currently in effect on June 1, 1999. We agree with defendant.

## II

Initially, we note that, where there is no ambiguity in a contract, "it is the responsibility of the court to interpret [the contract]" (*Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169, 172; *see also, W.W.W. Assocs. v Giancontieri*, 77 NY2d 157, 162). Even where, as here, a contract is ambiguous, its interpretation remains the exclusive function of the court unless "determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence" (*Hartford Acc. & Indem. Co. v Wesolowski, supra,* at 172). Here, no party submitted any extrinsic evidence concerning communications at the time the contracts were negotiated, and no party asserted that discovery would disclose such evidence. Rather, all parties asserted that the issue was one of law for the court. Although defendant sought discovery, that request was made in the alternative to its request for summary judgment and was addressed to issues concerning the parties' postagreement conduct and the defenses of ratification, waiver, estoppel, and laches. In the absence of any extrinsic evidence concerning communications during contract negotiations, the issue of the parties' intent is one of law for the court (*see, Hudson-Port Ewen Assocs. v Chien Kuo*, 165 AD2d 301, 305, *affd* 78 NY2d 944; *Tracey Rd. Equip. v Village of Johnson City*, 174 AD2d 849, 851; *see also, Sutton v East Riv. Sav. Bank*, 55 NY2d 550, 553-554; *cf., Newin Corp. v Hartford Acc. & Indem. Co.*, 62 NY2d 916, 919; *Kirby's Grill v Westvale Plaza*, 272 AD2d 978; *Bayer Realtors v W.E. Pearse, Inc.*, 256 AD2d 1164).

## III

In determining whether the contract before us is "reasonably certain in its material terms" and therefore sufficiently definite as to be enforceable, we must apply a standard that "is necessarily flexible, varying for example with the subject of the agreement, its complexity, the purpose for which the contract was made, the circumstances under which it was made, and the relation of the parties" (*Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 482-483, *rearg denied* 75 NY2d 863, *cert denied* 498 US 816; *see also, Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584, 589-590, *rearg denied* 93 NY2d 1042; *Martin Delicatessen v Schumacher*, 52 NY2d 105, 109).

Here, the general price review is unquestionably definite; if the parties cannot agree, the price is to be fixed by an arbitra-

tor (*see, Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp.*, 78 NY2d 88, 92). The issue before us is the intent of the parties if neither their agreement nor arbitration fixed the June 1999 through May 2006 price for refuse disposal. In determining that issue, we must apply the following well-established principles:

> "When interpreting a written contract, the court should give effect to the intent of the parties as revealed by the language and structure of the contract (*see, Breed v Insurance Co.*, 46 NY2d 351, 355, *rearg denied* 46 NY2d 940), and should ascertain such intent by examining the document as a whole (*see, Williams Press v State of New York*, 37 NY2d 434, 440). Effect and meaning must be given to every term of the contract (*see, County of Columbia v Continental Ins. Co.*, 83 NY2d 618, 628), and reasonable effort must be made to harmonize all of its terms (*see, Facet Indus. v Wright*, 95 AD2d 262, 265, *revd on other grounds* 62 NY2d 769; *Cantanucci v Reliance Ins. Co.*, 43 AD2d 622, 623, *affd* 35 NY2d 890). Moreover, the contract must be interpreted so as to give effect to, not nullify, its general or primary purpose (*see, Williams Press v State of New York, supra*, at 440; *Murray Oil Prods. v Royal Exch. Assur. Co.*, 21 NY2d 440, 445, *mot to amend remittitur granted* 22 NY2d 722)" (*Reda v Eastman Kodak Co.* [appeal No. 2], 233 AD2d 914, 914-915).

Applying those rules of construction, we conclude that the parties intended that, in the event no price was fixed pursuant to the 1994 general price review, the current price as of May 31, 1999—along with all other contractual obligations—would continue in effect.

As a threshold matter, we note that the general or primary purpose of the contract is to obligate the municipality to purchase, and defendant to furnish, refuse disposal services for a period of 25 years. That duration is expressly provided for by paragraph 8 of the contract, which further provides for only two methods of termination prior to the fixed expiration date: by mutual agreement during the first 10 years, and thereafter upon five years' written notice. Indeed, Eden furnished written notice of termination of its contract on September 4, 1997, while Hamburg furnished such notice on December 22, 1997.

Further, paragraphs 6 and 7 of the contract indicate that the purpose of the general price review is to determine only

whether the price would be changed, not whether there would be any price. The schedule of prices provided by paragraph 6 is a continuum; it begins with the bid price through May 31, 1991, then provides for formulaic *changes* to those prices for the periods from June 1, 1991 through May 31, 1994 and June 1, 1994 through May 31, 1999. Following that, the schedule provides for the general price review for the periods from June 1, 1999 through May 31, 2006 and June 1, 2006 through May 31, 2014.

Paragraph 6 defines the general price review as "[t]he overall review and adjustment of this Agreement's disposal price, which is to take place twice * * * in accordance with [paragraph] 7, hereinbelow." The phrase "review and adjustment" itself connotes an ongoing price, subject only to adjustment pursuant to the general price review. Notably, paragraph 7 is captioned "PRICE CHANGE PROCEDURES." That paragraph provides, *inter alia*, that the bid price cannot be changed either pursuant to the purported formulas for the periods from June 1, 1991 through May 31, 1994 and June 1, 1994 through May 31, 1999 or pursuant to the 1994 and 2001 general price reviews, unless the parties agree to such a change in writing or the change is determined by arbitration. Reading paragraph 7 in its entirety, we conclude that it must be interpreted to govern only whether there would be changes in, rather than a renegotiation of, the general refuse disposal price.

The contractual provisions describing the procedure for the general price review are consistent with that interpretation. Paragraph 7 further provides:

> "In the year 1994 the parties to this Agreement shall meet to determine, in good faith, *whether and to what extent, if any,* the formula, cost factors and rates of future compensation payable to the Contractor pursuant to this Agreement *should be revised,* with any such revised rates of compensation to be in effect from June 1, 1999, until May 31, 2006. A similar general price review will be undertaken in the year 2001, with any *revisions* from said second general price review to be in effect from June 1, 2006, until May 31, 2014" (emphasis added).

The clear import of that language, particularly in the context of the balance of paragraphs 6 and 7, is that the parties intended to determine by the general price review only whether the contract price would be revised, and not whether there

would be a contract price at all. Thus, the contracts are valid and enforceable until terminated in accordance with their terms.

Accordingly, we conclude that the order should be modified by striking the direction that discovery is to proceed and by granting the cross motions for summary judgment declaring that defendant's respective contracts with plaintiffs are valid and enforceable.

PIGOTT, JR., P. J., WISNER, KEHOE and BURNS, JJ., concur.

Order unanimously modified, on the law and as modified, affirmed, without costs, and judgment granted in accordance with the opinion by HURLBUTT, J.