■ DANIEL H. WILLIAMS, III, Respondent, v WILLIAM P. BROSNAHAN, Appellant. (Appeal No. 1.) [746 NYS2d 219] —Appeal from a judgment of Supreme Court, Erie County (Makowski, J.), entered April 23, 2001, which awarded plaintiff $1,173,158.10 upon a jury verdict rendered in favor of plaintiff.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously affirmed with costs.

Memorandum: Plaintiff and defendant were co-owners of four related corporations: Colad, Inc., Earle & Jones, Inc., National Cover of Atlanta, Inc. and SMA Holdings, Inc. (collectively, Colad). In 1988 Colad was losing money and defendant invested large sums of his own money to keep Colad in business. In December 1988 plaintiff and defendant entered into four agreements drafted by plaintiff, an attorney. The agreements contained identical provisions by which plaintiff agreed to sell his shares in the corporations to defendant for $1 per corporation. Clauses three and four of those agreements set forth circumstances under which defendant would be obligated to repay plaintiff the amount he had invested. Pursuant to clause three, if any of the four corporations "survives its present financial crisis and continues as an operating business, whether under the name of [the particular corporation] or some other name," defendant would repay plaintiff "his entire investment * * * within a reasonable period of time." Pursuant to clause four, neither defendant nor any other stockholder in Colad would "withdraw or receive directly or indirectly any monies or things of value" from Colad or from the sale of Colad stock or assets until plaintiff was repaid his entire investment.

Although Colad began to turn a profit several months after the transfer of plaintiff's shares to defendant, the bank that had extended Colad a line of credit demanded payment of all loan obligations. When Colad could not meet that demand, the bank foreclosed on Colad's assets. Defendant thereafter formed a new corporation, Colad Group, Inc. (Colad Group), with money realized from the sale of his family's business, Greater Buffalo Press (GBP). Colad Group purchased all of Colad's assets and accounts receivable from the bank and conducted the same business as had been conducted by Colad, with the same employees and the same customers.

When defendant refused the demand of plaintiff for repay-

ment of his investment under the terms of the agreements, plaintiff commenced this action alleging, among other things, breach of contract based on violations of clauses three and four of the agreements. Supreme Court concluded at trial that the two clauses were ambiguous and thus permitted the parties to present extrinsic evidence with respect to those clauses. No issue is raised on appeal with respect to the court's dismissal of the remaining causes of action. At the jury trial on the remaining cause of action for breach of contract, the case turned on the interpretation of the two clauses.

Plaintiff called defendant as a witness, whereupon defendant flatly denied that there were any offers to purchase or attempt to sell GBP before the agreements were signed in December 1988. Defendant's testimony contradicted the testimony of plaintiff that, at the time the agreements were negotiated, defendant had promised to pay him with money to be realized from the sale of GBP. Contrary to defendant's contention, the court properly permitted plaintiff to call the former president of GBP to testify that there had been offers to purchase GBP and negotiations to sell it before December 1988. Defendant objected to the testimony of that witness on the grounds that his testimony could be used for impeachment purposes only because he was not named on the court-ordered witness list, and plaintiff was prohibited from impeaching or discrediting his own witness (see generally Becker v Koch, 104 NY 394, 400). Contrary to defendant's contention, "[t]he general rule prohibiting a party from impeaching his or her own witness * * * does not apply where the witness is an adverse party" (Cammarota v Drake, 285 AD2d 919, 920; see Kelly v Wasserman, 5 NY2d 425, 428-429).

At the close of plaintiff's proof, the court reserved decision on defendant's motion to dismiss the complaint for failure to establish a prima facie case. At the close of all proof, defendant renewed his motion to dismiss and moved for a directed verdict. The court denied both motions insofar as they applied to that part of the breach of contract cause of action based on clause three and again reserved decision on the motions insofar as they applied to that part of the breach of contract cause of action based on clause four. After the jury returned a verdict in favor of plaintiff on the breach of contract cause of action in its entirety, the court denied those parts of defendant's motions based on clause four, upon which the court had reserved decision at the close of proof. The court, however, granted that part of defendant's subsequent motion to set aside that portion of the verdict based on clause four as contrary to the weight of the evidence.

Defendant contends that, by reserving decision on those parts of the motions seeking dismissal of the complaint and a directed verdict with respect to clause four at the close of proof and in thereafter setting aside the verdict with respect to that clause, the court improperly tainted jury deliberations by allowing the jury to consider the evidence with respect to clause four. Defendant failed to object when the court reserved decision at the close of proof, however, and thus failed to preserve his contention for our review. In any event, where, as here, the court has doubts about "the merits of plaintiff's proof, the proper procedure [is] to reserve decision" (*Slusarczyk v Slusarczyk*, 41 AD2d 593, 593).

Contrary to the further contention of defendant, the court properly denied that part of his motion for a directed verdict and that part of his subsequent motion for judgment notwithstanding the verdict with respect to clause three. The interpretation of the extrinsic evidence presented by the parties was properly left to the jury because the "determination of the intent of the parties depend[ed] on the credibility of [the] extrinsic evidence or on a choice among reasonable inferences to be drawn from [it]" (*Village of Hamburg v American Ref-Fuel Co. of Niagara*, 284 AD2d 85, 88, *lv denied* 97 NY2d 603 [internal quotation marks omitted]; *see Arrow Communication Labs. v Pico Prods.*, 219 AD2d 859, 860). We further conclude that the court properly denied that part of defendant's motion to set aside the verdict as against the weight of the evidence with respect to clause three (*see generally Lolik v Big V Supermarkets*, 86 NY2d 744, 746; *Cohen v Hallmark Cards*, 45 NY2d 493, 499).

Defendant further contends that the court erred in failing to preclude plaintiff's attorney from making certain references to clause four in summation. Although the court did not rule on defendant's motion to preclude plaintiff's attorney from making those references, the court's failure to rule is deemed a denial (*see Brown v U.S. Vanadium Corp.*, 198 AD2d 863, 864). We conclude that the motion was properly denied. The court had not yet ruled on defendant's motions with respect to clause four, and thus plaintiff's attorney was properly permitted to address on summation the merits of defendant's position with respect to that clause. In any event, the court instructed the jury that the evidence concerning clause four was not to be considered in support of clause three, and "[t]he jury is, of course, presumed to have followed the court's instructions" (*Peters v Port Auth. Trans-Hudson Corp.*, 234 AD2d 205, 207, *lv denied* 90 NY2d 802; *see Nordhauser v New York City Health & Hosps. Corp.*, 176 AD2d 787, 790).

We conclude that neither of defendant's remaining contentions warrants reversal. Defendant contends that he was prejudiced by the court's failure to give counsel a proposed verdict sheet before summations. Although it is preferable that the court prior to summations "inform counsel of the questions that are intended for submission to the jury" (1A NY PJI3d 160 [2002]), there is no requirement that the verdict sheet be given to counsel before summations, and under the circumstances of this case we perceive no prejudice to defendant. Finally, "no basis exists to warrant a finding of juror confusion or inconsistency in the verdict," and thus reversal is not warranted based on any alleged errors in the verdict sheet (*Szeztaye v LaVacca*, 179 AD2d 555, 556; *see Alkinburgh v Glessing*, 240 AD2d 904, 905; *cf. Flanagan v Southside Hosp.*, 251 AD2d 447, 448-449). Present—Pine, J.P., Wisner, Kehoe, Burns and Lawton, JJ.