# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**878**
**CA 16-00160**
PRESENT: WHALEN, P.J., SMITH, LINDLEY, TROUTMAN, AND SCUDDER, JJ.

---

MAVEN TECHNOLOGIES, LLC AND TODD R. WHEATON,
PLAINTIFFS-APPELLANTS-RESPONDENTS,

V                                                MEMORANDUM AND ORDER

GAYLE A. VASILE, AS EXECUTOR OF THE ESTATE OF
ANTHONY R. VASILE, DEFENDANT-RESPONDENT-APPELLANT.

---

JASON S. DIPONZIO, ROCHESTER, FOR PLAINTIFFS-APPELLANTS-RESPONDENTS.

KAMAN, BERLOVE, MARAFIOTI, JACOBSTEIN & GOLDMAN, LLP, ROCHESTER
(RICHARD GLEN CURTIS OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT.

---

Appeal and cross appeal from an order of the Supreme Court, Monroe County (Matthew A. Rosenbaum, J.), entered May 1, 2015. The order denied defendant's motion for partial summary judgment and denied plaintiffs' cross motion for summary judgment.

It is hereby ORDERED that the order so appealed from is affirmed without costs.

Memorandum: Plaintiff Maven Technologies, LLC (Maven), was organized by Anthony R. Vasile (decedent) and others pursuant to an operating agreement. After the other owners died, decedent prepared Maven's Amended and Restated Operating Agreement (Agreement), which is at issue here. Pursuant to the Agreement, plaintiff Todd R. Wheaton became Maven's president and owner of 30% of Maven's shares, and decedent owned the remaining 70%. The Agreement also contained numerous provisions limiting the parties' ability to dispose of their shares, the manner in which the shares were transferred, and the price that must be paid for them. After decedent's demise, plaintiffs commenced this action seeking, inter alia, a declaration that the Agreement's terms mandated that defendant, decedent's executor, sell the shares formerly owned by decedent to Maven at their net book value. In her answer, defendant contended that decedent bequeathed his shares to a trust, of which defendant was the trustee, and thus that the trust was a member of Maven within the meaning of the Agreement. The answer included a counterclaim in which defendant sought, among other relief, a declaration that decedent's trust was the owner of 70% of Maven's shares, and an accounting. Plaintiffs appeal and defendant cross-appeals from an order that denied both defendant's motion for partial summary judgment declaring the rights of the parties and plaintiffs' cross motion for summary judgment on the complaint. We affirm.

Initially, we note that the parties fail to address in their respective briefs on appeal the denial of the motion and cross motion with respect to the cause of action seeking specific performance, and thus they have abandoned any contentions concerning that cause of action (*see Ciesinski v Town of Aurora*, 202 AD2d 984, 984).

Resolution of the remainder of this appeal depends on the principles of contract interpretation.  "It is well settled that a contract must be read as a whole to give effect and meaning to every term . . . Indeed, '[a] contract should be interpreted in a way [that] reconciles all [of] its provisions, if possible' " (*New York State Thruway Auth. v KTA-Tator Eng'g Servs., P.C.*, 78 AD3d 1566, 1567; *see RLI Ins. Co. v Smiedala*, 96 AD3d 1409, 1411).  Therefore, "[e]ffect and meaning must be given to every term of the contract . . . , and reasonable effort must be made to harmonize all of its terms" (*Village of Hamburg v American Ref-Fuel Co. of Niagara*, 284 AD2d 85, 89, *lv denied* 97 NY2d 603; *see Matter of El-Roh Realty Corp.*, 74 AD3d 1796, 1799).  It is equally well settled that "[t]he interpretation of an unambiguous contractual provision is a function for the court . . . , and [t]he proper inquiry in determining whether a contract is ambiguous is whether the agreement on its face is reasonably susceptible of more than one interpretation . . . To be entitled to summary judgment, the moving party has the burden of establishing that its construction of the [contract] is the only construction [that] can fairly be placed thereon" (*Nancy Rose Stormer, P.C. v County of Oneida*, 66 AD3d 1449, 1450 [internal quotation marks omitted]).

Here, neither party established that its interpretation of the Agreement is the only reasonable interpretation thereof (*see Arrow Communication Labs. v Pico Prods*., 206 AD2d 922, 923).  Consequently, summary judgment is inappropriate at this juncture because a "determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence" (*P&B Capital Group, LLC v RAB Performance Recoveries, LLC*, 128 AD3d 1534, 1535 [internal quotation marks omitted]; *see Matter of Wilson*, 138 AD3d 1441, 1442-1443; *Kibler v Gillard Constr., Inc.*, 53 AD3d 1040, 1041-1042; *Arrow Communication Labs.*, 206 AD2d at 923).

All concur except WHALEN, P.J., and TROUTMAN, J., who dissent and vote to modify in accordance with the following memorandum:  We respectfully dissent.  Although we agree with the majority that the Amended and Restated Operating Agreement (Agreement) is ambiguous, we do not agree that the interpretation of the Agreement depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.  Here, the interpretation of the Agreement is the exclusive function of a court, and we conclude that plaintiffs have established that their construction is " 'the only construction [that] can fairly be placed thereon' " (*DiPizio Constr. Co., Inc. v Erie Canal Harbor Dev. Corp.*, 120 AD3d 905, 906).  We therefore vote to modify the order by granting plaintiffs' cross motion for summary judgment in part and granting judgment in plaintiffs' favor, declaring that defendant Gayle A. Vasile, as executor of the Estate of Anthony R. Vasile (decedent),

must transfer decedent's 70% interest in plaintiff Maven Technologies, LLC (Maven) to that company at net book value.

The dispute underlying this action arose following the February 2014 death of decedent, the owner of a 70% membership interest in Maven. Maven's president, Todd R. Wheaton (plaintiff), owns the remaining 30%. At issue is the disposition of decedent's 70% interest under the terms of the Agreement.

Article 6 of the Agreement governs the transfer of membership interests and the withdrawal of existing members. Section 6.1.1 provides that a member who owns "more than 50% in Membership Interest may transfer all, or any portion of, or any interest in, the Membership Interest owned by the Member." Conversely, section 6.1.2 prohibits a member with a minority membership interest from transferring any portion of his or her interest and renders any such transfer "invalid, null and void, and of no force or effect." Section 1.21 defines a "transfer" as "any sale, hypothecation, pledge, assignment, gift, bequest, attachment, or other transfer." A member's "involuntary withdrawal," which section 1.11 (iv) defines as including "the occurrence" of the "death" of "any Member," triggers section 6.3, which provides: "Immediately upon the occurrence of an Involuntary Withdrawal, other than for Cause, the successor of the Withdrawn Member shall thereupon become an Interest Holder but shall not become a Member." Section 6.3 further provides that, within 180 days of the involuntary withdrawal, Maven "shall pay the successor Interest Holder the Net Book Value per unit of his Interest." The Agreement, which was executed by both decedent and plaintiff, went into effect December 31, 2007.

In his pour-over will, decedent purportedly bequeathed his membership interest in Maven to a living trust. After his death, plaintiffs commenced this action seeking, inter alia, a declaration that defendant as executor of the estate is obligated under section 6.3 to sell decedent's 70% interest back to Maven at net book value. Defendant interposed an answer and thereafter moved for "partial summary judgment" seeking, inter alia, a declaration that section 6.1 allowed decedent as the owner of a majority interest to bequeath his membership interest to his living trust. In support of her motion, defendant submitted the affirmation of her attorney, who described a conversation he had with the attorney whom decedent purportedly contacted to amend Maven's original operating agreement. During that process, decedent reportedly directed his attorney to insert section 6.1.1, a new provision allowing transfer only by the owner of a majority interest. Attached to the affirmation was a copy of the original operating agreement and an excerpt from decedent's living trust instrument executed in October 2011, which provided the trustee with specific instructions concerning the disposition of decedent's interest in Maven. In addition, defendant submitted a second attorney affirmation and her own affidavit, which primarily contained speculation with respect to decedent's intent in amending the original operating agreement. Plaintiffs then cross-moved for summary judgment on their complaint and submitted the affirmation of their attorney, who contended that the language of the Agreement was unambiguous, and

objected to the use of extrinsic evidence to interpret unambiguous contract language.

Supreme Court denied the motion and cross motion, reasoning that the conflict between sections 6.1 and 6.3 "creates an issue of fact as to [d]ecedent's intent which [cannot] be resolved in favor of either party on a motion for summary judgment."  In our view, that was error.

It is well established that, where "a contract is ambiguous, its interpretation remains the exclusive function of the court unless 'determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence' " (*Town of Eden v American Ref-Fuel Co. of Niagara*, 284 AD2d 85, 88, *lv denied* 97 NY2d 603, quoting *Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169, 172).  Neither party submitted admissible evidence concerning decedent's intent at the time the Agreement was executed, nor have they identified where such evidence might be found (*see id.*).  Moreover, both parties have steadfastly maintained that the issue should be resolved as a matter of law, and "it is well settled that 'parties to a civil dispute are free to chart their own litigation course' (*Mitchell v New York Hosp.*, 61 NY2d 208, 214), and 'may fashion the bases upon which a particular controversy will be resolved' (*Cullen v Naples*, 31 NY2d 818, 820)" (*Austin Harvard LLC v City of Canandaigua*, 141 AD3d 1158, 1158). Therefore, because the ambiguity " 'must be resolved wholly without reference to extrinsic evidence[,] the issue is to be determined as a question of law for the court' " (*P&B Capital Group, LLC v RAB Performance Recoveries, LLC*, 128 AD3d 1534, 1535, quoting *Hartford Acc. & Indem. Co.*, 33 NY2d at 172).  Furthermore, the principles of contract interpretation require that we give effect and meaning to every provision and make a reasonable effort to harmonize all of the contract's terms (*see DiPizio Constr. Co., Inc.*, 120 AD3d at 906).  To that end, "[w]here two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect" (*id.* at 907 [internal quotation marks omitted]).

We conclude that plaintiffs established as a matter of law that their construction of the contract is " 'the only construction [that] can fairly be placed thereon' " (*id.* at 906).  Only plaintiffs' construction, in our view, harmonizes and gives full effect to all of the Agreement's provisions.  Section 6.3 contains mandatory language that provides for membership "immediately" to cease upon the death of a member, and compels Maven's repurchase of the deceased member's interest.  By contrast, section 6.1.1 contains permissive language that allows a transfer of interest to be made by a member "holding more than 50% in Membership Interest."  When read together, those provisions allow the owner of a majority interest to transfer all or some of that interest during his or her lifetime; however, upon that member's death, his or her interest ceases to be a membership interest at the time it passes to his or her successor, who is then obligated to sell the interest back to Maven at net book value.

We reject defendant's contention that the Agreement limits the application of section 6.3 to owners of a minority interest.  To the

contrary, that provision is triggered "upon the occurrence of an Involuntary Withdrawal" and, as previously noted herein, section 1.11 (iv) defines an involuntary withdrawal as including "the occurrence" of the "death" of "any Member."  Contrary to defendant's further contention, our construction of the Agreement does not render meaningless the terms contained in section 6.1.1, which permit transfers to be made by a person who owns a membership interest of more than 50%.  Nor does our construction render meaningless the terms contained in section 1.21, which provide a broad definition of "transfer" to include virtually any lawful means of passing ownership of personal property from one person to another.  Indeed, it is undisputed that the Agreement allowed decedent to transfer his interest in Maven to his living trust during his lifetime and that he did not do so.  Inasmuch as the language of the Agreement supports plaintiffs' rather than defendant's construction thereof, we conclude that the court erred in denying that part of plaintiffs' cross motion for summary judgment seeking a declaration to that effect.

Entered:  February 3, 2017                     Frances E. Cafarell
                                               Clerk of the Court