Whalen, P.J., and Troutman, J.
(dissenting). We respectfully dissent. Although we agree with the majority that the amended and restated operating agreement (agreement) is ambiguous, we do not agree that the interpretation of the agreement *1379 depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence. Here, the interpretation of the agreement is the exclusive function of a court, and we conclude that plaintiffs have established that their construction is “ ‘the only construction [that] can fairly be placed thereon’ ” (DiPizio Constr. Co., Inc. v Erie Canal Harbor Dev. Corp., 120 AD3d 905, 906 [2014]). We therefore vote to modify the order by granting plaintiffs’ cross motion for summary judgment in part and granting judgment in plaintiffs’ favor, declaring that defendant Gayle A. Vasile, as executor of the Estate of Anthony R. Vasile (decedent), must transfer decedent’s 70% interest in plaintiff Maven Technologies, LLC (Maven) to that company at net book value.
The dispute underlying this action arose following the February 2014 death of decedent, the owner of a 70% membership interest in Maven. Maven’s president, Todd R. Wheaton (plaintiff), owns the remaining 30%. At issue is the disposition of decedent’s 70% interest under the terms of the agreement.
Article 6 of the agreement governs the transfer of membership interests and the withdrawal of existing members. Section 6.1.1 provides that a member who owns “more than 50% in Membership Interest may transfer all, or any portion of, or any interest in, the Membership Interest owned by the Member.” Conversely, section 6.1.2 prohibits a member with a minority membership interest from transferring any portion of his or her interest and renders any such transfer “invalid, null and void, and of no force or effect.” Section 1.21 defines a “transfer” as “any sale, hypothecation, pledge, assignment, gift, bequest, attachment, or other transfer.” A member’s “involuntary withdrawal,” which section 1.11 (iv) defines as including “the occurrence” of the “death” of “any Member,” triggers section 6.3, which provides: “Immediately upon the occurrence of an Involuntary Withdrawal, other than for Cause, the successor of the Withdrawn Member shall thereupon become an Interest Holder but shall not become a Member.” Section 6.3 further provides that, within 180 days of the involuntary withdrawal, Maven “shall pay the successor Interest Holder the Net Book Value per unit of his Interest.” The agreement, which was executed by both decedent and plaintiff, went into effect December 31, 2007.
In his pour-over will, decedent purportedly bequeathed his membership interest in Maven to a living trust. After his death, plaintiffs commenced this action seeking, inter alia, a declaration that defendant as executor of the estate is obligated under section 6.3 to sell decedent’s 70% interest back to Maven at net *1380 book value. Defendant interposed an answer and thereafter moved for “partial summary judgment” seeking, inter alia, a declaration that section 6.1 allowed decedent as the owner of a majority interest to bequeath his membership interest to his living trust. In support of her motion, defendant submitted the affirmation of her attorney, who described a conversation he had with the attorney whom decedent purportedly contacted to amend Maven’s original operating agreement. During that process, decedent reportedly directed his attorney to insert section 6.1.1, a new provision allowing transfer only by the owner of a majority interest. Attached to the affirmation was a copy of the original operating agreement and an excerpt from decedent’s living trust instrument executed in October 2011, which provided the trustee with specific instructions concerning the disposition of decedent’s interest in Maven. In addition, defendant submitted a second attorney affirmation and her own affidavit, which primarily contained speculation with respect to decedent’s intent in amending the original operating agreement. Plaintiffs then cross-moved for summary judgment on their complaint and submitted the affirmation of their attorney, who contended that the language of the agreement was unambiguous, and objected to the use of extrinsic evidence to interpret unambiguous contract language.
Supreme Court denied the motion and cross motion, reasoning that the conflict between sections 6.1 and 6.3 “creates an issue of fact as to [djecedent’s intent which [cannot] be resolved in favor of either party on a motion for summary judgment.” In our view, that was error.
It is well established that, where “a contract is ambiguous, its interpretation remains the exclusive function of the court unless ‘determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence’ ” (Town of Eden v American Ref-Fuel Co. of Niagara, 284 AD2d 85, 88 [2001], lv denied 97 NY2d 603 [2001], quoting Hartford Ace. & Indem. Co. v Wesolowski, 33 NY2d 169, 172 [1973]). Neither party submitted admissible evidence concerning decedent’s intent at the time the agreement was executed, nor have they identified where such evidence might be found (see id.). Moreover, both parties have steadfastly maintained that the issue should be resolved as a matter of law, and “it is well settled that ‘parties to a civil dispute are free to chart their own litigation course’ (Mitchell v New York Hosp., 61 NY2d 208, 214 [1984]), and ‘may fashion the bases upon which a particular controversy will be resolved’ (Cullen v Naples, 31 *1381 NY2d 818, 820 [1972])” (Austin Harvard LLC v City of Canandaigua, 141 AD3d 1158, 1158 [2016]). Therefore, because the ambiguity “ ‘must be resolved wholly without reference to extrinsic evidence [,] the issue is to be determined as a question of law for the court’ ” (P&B Capital Group, LLC v RAB Performance Recoveries, LLC, 128 AD3d 1534, 1535 [2015], quoting Hartford Acc. & Indem. Co., 33 NY2d at 172). Furthermore, the principles of contract interpretation require that we give effect and meaning to every provision and make a reasonable effort to harmonize all of the contract’s terms (see DiPizio Constr. Co., Inc., 120 AD3d at 906). To that end, “[w]here two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect” (id. at 907 [internal quotation marks omitted]).
We conclude that plaintiffs established as a matter of law that their construction of the contract is “ ‘the only construction [that] can fairly be placed thereon’ ” (id. at 906). Only plaintiffs’ construction, in our view, harmonizes and gives full effect to all of the agreement’s provisions. Section 6.3 contains mandatory language that provides for membership “immediately” to cease upon the death of a member, and compels Maven’s repurchase of the deceased member’s interest. By contrast, section 6.1.1 contains permissive language that allows a transfer of interest to be made by a member “holding more than 50% in Membership Interest.” When read together, those provisions allow the owner of a majority interest to transfer all or some of that interest during his or her lifetime; however, upon that member’s death, his or her interest ceases to be a membership interest at the time it passes to his or her successor, who is then obligated to sell the interest back to Maven at net book value.
We reject defendant’s contention that the agreement limits the application of section 6.3 to owners of a minority interest. To the contrary, that provision is triggered “upon the occurrence of an Involuntary Withdrawal” and, as previously noted herein, section 1.11 (iv) defines an involuntary withdrawal as including “the occurrence” of the “death” of “any Member.” Contrary to defendant’s further contention, our construction of the agreement does not render meaningless the terms contained in section 6.1.1, which permit transfers to be made by a person who owns a membership interest of more than 50%. Nor does our construction render meaningless the terms contained in section 1.21, which provide a broad definition of “transfer” to include virtually any lawful means of passing ownership of personal property from one person to another. *1382 Indeed, it is undisputed that the agreement allowed decedent to transfer his interest in Maven to his living trust during his lifetime and that he did not do so. Inasmuch as the language of the agreement supports plaintiffs’ rather than defendant’s construction thereof, we conclude that the court erred in denying that part of plaintiffs’ cross motion for summary judgment seeking a declaration to that effect.
Present — Whalen, P.J., Smith, Lindley, Troutman and Scudder, JJ.